1   Hank Bates (Bar No. 167688)
    hbates@cbplaw.com
2   Carney Bates & Pulliam, PLLC
    519 West 7th Street
3   Little Rock, Arkansas 72201
    Telephone:  (501) 312-8500
4   Facsimile:   (501) 312-8505

5   Brandon M. Haubert (*pro hac vice* pending)
    brandon@whlawoffices.com
6   Wilson & Haubert, PLLC
    102 South Fulton Street, Suite B
7   Clarksville, Arkansas 72830
    Telephone:  (479) 754-2512

8
    John B. Thomas (Bar No. 269538)
9   jthomas@hicks-thomas.com
    Eric Grant (Bar No. 151064)
10  grant@hicks-thomas.com
    Hicks Thomas LLP
11  8801 Folsom Boulevard, Suite 172
    Sacramento, California 95826
12  Telephone:  (916) 388-0833
    Facsimile:   (916) 691-3261

13
    *Counsel for Plaintiffs*
14  *JIMMIE HODGE and GLORIA HODGE*

15                UNITED STATES DISTRICT COURT

16              EASTERN DISTRICT OF CALIFORNIA

17                    FRESNO DIVISION

18  JIMMIE HODGE and GLORIA HODGE,        )  No.
    individually and on behalf of a class of  )
19  similarly situated individuals,          )
                                             )
20              Plaintiffs,                  )  **COMPLAINT**
                                             )
21          v.                               )  **JURY TRIAL DEMANDED**
                                             )
22  NATIONSTAR MORTGAGE HOLDINGS,           )
    INC. and BANK OF AMERICA, N.A.,          )
23                                           )
                Defendants.                  )
24                                           )
                                             )
25                                           )
                                             )
26                                           )
                                             )
27                                           )
                                             )
28  _____ )

Plaintiffs Jimmie Hodge and Gloria Hodge ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons ("Class Members"), and allege as follows:

**INTRODUCTION**

1.     This action arises from the systemic and improper collusion between Nationstar Mortgage Holdings, Inc. ("Nationstar") and Bank of America, N.A. ("Bank of America") to charge homeowners inflated amounts of principal on their mortgages.  This practice results in homeowners being presented with unexpected "balloon payments" at the end of the life of their mortgage.  This figure can be astronomic — in Plaintiffs' case, the amount Defendants claimed due was 20% of the underlying loan.

2.     When asked for a full accounting, Defendants are either incapable or unwilling to verify the legitimacy of this purported amount due.  Specifically, Defendants refuse to provide a complete servicing and payment history for the entirety of the loan's life.  However, as detailed more fully below, Defendants purport to calculate this "balloon payment" based upon the specific date of each payment made over the course of the loan's life.  Because Defendants do not provide this information to Plaintiffs or Class members, the "balloon payment" cannot be independently verified.  However, as described herein, the remaining principal balance reported by Defendants is a mathematical impossibility.

3.     Specifically, Defendant Nationstar acquired servicing rights for mortgages that were originated with and previously serviced by Defendant Bank of America.  Without substantiating its claims through Bank of America's prior servicing records, Nationstar claims that due to purported late payments in its mortgagees' payment histories, additional interest should be charged on the loan, which in turn caused the loan's principal to be amortized at a drastically reduced rate from that articulated in the loan's note.  However, when pressed, Nationstar has failed to provide records of these purported late payments (specifically, the servicing history from Bank of America's records).  Thus Nationstar, acting on behalf of Bank of America, either cannot or will not provide a complete schedule detailing the accrual of increased principal over the entire life of the loan.

4.     Because of the refusal of Bank of America and Nationstar to provide complete documentation, it is impossible for Plaintiffs and Class members to determine whether or not they actually are required to pay the "balloon payments," which are separate and apart from the payments detailed in the amortization schedules of the underlying loans.  Accordingly, Plaintiffs and Class members — who have faithfully abided by the terms of their mortgages — are either forced to pay Defendants' extortionate and unsubstantiated *additional* principal amounts, or else risk the foreclosure of their property.

5.     Nationstar's refusal or inability to provide the entire servicing history of Plaintiffs and Class members (and thereby substantiate the purportedly owed "balloon payment") violates the consumer protection requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and has additionally led to Nationstar's unjust enrichment.

6.     By colluding with Nationstar in seeking to extract unsubstantiated, additional amounts of principal from its mortgages, Bank of America has breached its contract with Plaintiffs and Class members and has violated the covenant of good faith and fair dealing.

7.     Plaintiffs bring this action on behalf a Class of all residential mortgagors in the United States whose loans were originated with or previously serviced by Bank of America, whose loans were subsequently serviced by Nationstar, and whom Defendants contend owe a balance on their mortgage that conflicts with the terms (including the amortization schedule) of the underlying mortgage note.  On behalf of themselves and Class members, Plaintiffs seek actual damages, statutory damages, punitive damages, attorney's fees, costs, and declaratory and equitable relief.

**JURISDICTION**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which at least two members of the proposed Class (named Plaintiffs Jimmie Hodge and Gloria Hodge) are citizens of Arkansas, while Defendant Nationstar

is a citizen of Delaware and Texas, and Defendant Bank of America is a citizen of Delaware and North Carolina.

9.      Additionally, this Court has original subject matter jurisdiction over Counts I and II of this Complaint pursuant to 28 U.S.C. § 1331 because those claims arise under the laws of the United States, namely, the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").

10.     This Court has supplemental subject-matter jurisdiction over the remaining claims of this Complaint pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Counts I and II that they form part of the same case or controversy under Article III of the United States Constitution.

**VENUE**

11.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

12.     For purposes of Local Rule 120(d), this action arises in Stanislaus County and is therefore properly commenced in Fresno.

**PARTIES**

13.     Plaintiff Jimmie Hodge is a resident of Franklin County, Arkansas, and has at all relevant times been a mortgagor of the real property located at 1100 Parnell Avenue, Turlock, California 95380.

14.     Plaintiff Gloria Hodge is a resident of Franklin County, Arkansas, and has at all relevant times been a mortgagor of the real property located at 1100 Parnell Avenue, Turlock, California 95380.

15.     Defendant Nationstar Mortgage Holdings, Inc. ("Nationstar"), a Delaware corporation, is a residential mortgage loan servicing company, with its principal place of business in Coppell, Texas.  Pursuant to 28 U.S.C. § 1391(c), Nationstar resides in this judicial district because it is subject to personal jurisdiction here.

16.     Defendant Bank of America, N.A. ("Bank of America"), a Delaware corporation, is a banking and financial services company that provides, *inter alia*, commercial, consumer, and

mortgage banking services to its customers.  Bank of America has its principal place of business in Charlotte, North Carolina.  Pursuant to 28 U.S.C. § 1391(c), Bank of America resides in this judicial district because it is subject to personal jurisdiction here.

## GENERAL ALLEGATIONS

**A.      Plaintiffs' Mortgage with Bank of America and Nationstar's Assumption of Servicing Rights.**

17.     On or about January 5, 2001, Plaintiffs incurred a mortgage obligation to Bank of America for real property located at 1100 Parnell Avenue, Turlock, California 95380 (the "Property" or "1100 Parnell Ave.").  The Property was the residence of Plaintiff Gloria Hodge's mother.

18.     The promissory note securing the mortgage loan (the "Note") stated that the annual percentage rate of the loan was 7.862%, the principal amount of the loan was $50,479.00, the finance charge was $35,892.74, and the total amount of all scheduled payments was $86,371.74.  The terms of the Note further stated that repayment would begin on February 19, 2001, and would be spread out across 180 monthly payments, with the monthly amount due on the first 179 payments of $479.84, and the final payment due in an amount of $480.84.   A true and correct copy of the Note is attached hereto as Exhibit A.

19.     The Note further states that late fees will not be assessed unless Plaintiffs are "15 days or more late in paying all or part of a payment."

20.     From February 2001 through June 2013, Plaintiffs made their full monthly payments on the Note within the 15-day grace period, with the exception of a five-month period in 2005.  During this period, Plaintiffs asked for (and Bank of America granted) a change in the repayment schedule.  Under the terms of this agreement, beginning on November 19, 2005, and continuing through March 19, 2006, Plaintiffs paid $240 per month (the monthly interest on the Note).  A true and correct copy of this agreement is attached hereto as Exhibit B.

21.     On April 19, 2006, Plaintiffs resumed their original monthly payments of $479.64.

22.     Pursuant to this modification in Plaintiffs' payment schedule, the final payment on the Note was now extended to July 19, 2016.  Per the agreement, Plaintiffs would have to "continue to make payments through 07/19/2016 in order to reinstate [their] account."  Exhibit B.

23.     On or about June 25, 2013, Plaintiffs received a letter from Nationstar ("June 25, 2013 Letter"), informing them that Nationstar had acquired and would service the mortgage of the Property, as of July 1, 2013.  The June 25, 2013 Letter further stated that Plaintiffs' "original loan terms will not change as a result of this transfer."  A true and correct copy of the June 25, 2013 Letter is attached hereto as Exhibit C.

**B.     Defendants Unlawfully Increase the Amount Purportedly Owed on Plaintiffs' Mortgage and Repeatedly Refuse to Substantiate the Amount Owed.**

24.     Following the receipt of the June 25, 2013 Letter from Nationstar, Plaintiffs continued to dutifully make their payments on the Note, never paying later than 15 days past the scheduled monthly payment date.

25.     On March 2, 2016, Nationstar sent Plaintiffs a letter (the "March 2, 2016 Letter") advising them that the Note would "expire or mature on 8/19/2016," and that a payoff statement detailing the final balance would be mailed under separate cover.  A true and correct copy of the March 2, 2016 Letter is attached hereto as Exhibit D.

26.     On March 2, 2016, Nationstar also sent Plaintiffs a statement  indicating a payoff balance of $11,469.00 ("March 2, 2016 Statement").  A true and correct copy of the March 2, 2016 Statement is attached hereto as Exhibit E.  If Plaintiffs continued to make their scheduled payments in accordance with the terms of their loan, this would result in a final payment of approximately $9,234.14 in unpaid principal, as opposed to the final payment of $480.84 detailed in the Note.  *Compare* Exhibit A, *with* Exhibit E.

27.     Concerned by this drastic discrepancy, Plaintiff Gloria Hodge called Nationstar to inquire about the purported increase in the loan.  The Nationstar employee with whom she spoke informed Ms. Hodge that this number was reflective of the $50,000 borrowed from the Note.  When Ms. Hodge referred to the final payment of $480.84 detailed in the Note, she was told that Plaintiffs nonetheless owed a final payment of approximately $9,234.14, as detailed in Exhibit E.

28.     Plaintiffs then filed a complaint with the Arkansas Attorney General's Office on March 9, 2016, seeking verification from Nationstar as to the validity of this purported debt ("Attorney General Complaint").  A true and correct copy of that complaint is attached hereto as Exhibit F.  Subsequently, on March 10, 2016, the Arkansas Attorney General's Office sent an email informing Nationstar of the Attorney General Complaint and seeking to resolve the matter ("AG Email to Nationstar").   The AG Email to Nationstar contained, *inter alia*, Plaintiffs' names, information sufficient to identify the account number of their loan, and a request for an explanation of the "balloon payment" Nationstar claims was due, in light of Plaintiffs' diligent payment history of 15 years and Plaintiffs' insistence that the "balloon payment" was in error.

29.     Nationstar responded on March 23, 2016 (the "March 23, 2016 Letter"), stating that Plaintiffs

> have a Daily Simple Interest (DSI) loan with the first payment due on February 19, 2001.  The [underlying] Note states "Since interest will accrue daily on the principal amount outstanding, the actual finance charge, total of payments, and final payment may vary, depending upon the date(s) payments are actually made by me."  The Note further states the finance charge on the outstanding balance is determined on a simple interest basis.  If the customer makes payments before or after any due date, the amount of the final payment may be higher or lower than the amount originally scheduled. . . .
>
> . . . A review of the payment history reflects the customers remitted payments on different dates monthly, thus causing more funds to be applied to interest and resulting in the remaining unpaid principal balance (UPB).
>
> . . . .
>
> Overall, no errors were identified during the course of our investigation.  Mr. and Mrs. Hodge have the right to access the documents relied upon in this investigation.  We have enclosed these documents for their records.

A true and correct copy of the March 23, 2016 Letter is attached hereto as Exhibit G.

30.     However, the document appended to the March 23, 2016 Letter only contained Plaintiffs' payment history from July 2013, forward (*i.e.,* the date upon which Nationstar began servicing the Note).  A true and correct copy of that document is attached hereto as Exhibit H. This payment history does not provide the payment history (and thus the actual amortization) of the Note from the beginning of the loan (February 2001) through the present, nor does it detail *any* purported overages that may have accrued from February 2001 through July 2013.  Instead,

the schedule picks up almost twelve-and-a-half years into the mortgage and begins with a principal balance that is patently unverifiable. Thus, nothing in the March 23, 2016 Letter explains how Plaintiffs purportedly fell almost $10,000 in arrears on the Note since February 2001.

31.     On or about June 6, 2016, Plaintiffs again contacted Nationstar and asked for a more thorough audit substantiating the purported amount owed. Nationstar sent Plaintiffs an updated version of the payment history that had been appended to its March 23, 2016 Letter. A true and correct copy of this updated payment history ("June 6, 2016 Payment History") is attached hereto as Exhibit I. Like the previous payment history, the June 6, 2016 Payment History fails to show the actual amortization of the Note from the beginning of the loan through the present, and instead begins on July 5, 2013, articulating a principal balance that is unverified and, upon information and belief, unverifiable.

32.     Indeed, even if Plaintiffs had made *all 180 of their mortgage payments* on the latest possible day of the grace period each month (*i.e.,* fifteen days after the due date articulated in the Note), and even taking into account the five-month interest-only payments in 2005, Plaintiffs' principal arrearages would have been less than $2,000 by the date of their 180th payment.

33.     On July 8, 2016, Plaintiffs sent their 180th payment of $480.84, as required by the Note ("July 8, 2016 Letter"). A true and correct copy of that letter is attached hereto as Exhibit J. The July 8, 2016 Letter identified Plaintiffs, as well as Plaintiffs' account numbers with both Nationstar and Bank of America. The July 8, 2016 Letter challenged Nationstar's accounting of Plaintiffs' payment history, as well as the amount of the additional principal purportedly owed, and sought any and all documentation from Nationstar verifying the amount of the debt owed, including but not limited to Plaintiffs' payment history from 2001 to 2013.

34.     Subsequently, on July 20, 2016, Nationstar sent Plaintiffs a statement ("July 20, 2016 Statement") showing a principal balance of $9,234.14 and demanding a monthly payment of $479.84 by August 19, 2016. A true and correct copy of the July 20, 2016 Statement is attached hereto as Exhibit K.

35.     On August 22, 2016, Nationstar sent a statement ("August 22, 2016 Statement") showing a principal balance of $9,234.14 but this time demanding a payment of $979.74 by September 19, 2016.  A true and correct copy of the August 22, 2016 Statement is attached hereto as Exhibit L.

36.     Plaintiffs have faithfully paid the entirety of the amounts articulated in the Note. Despite this fact, they are now faced with the Hobson's choice of paying an *additional* amount of almost $10,000 that is predicated on nothing more than Defendants' say so, or else risking foreclosure on 1100 Parnell Ave.

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and/or 23(b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

38.     The proposed Class is defined as:

> All residential mortgagors in the United States whose loans were originated with or previously serviced by Bank of America, whose loans were subsequently serviced by Nationstar, and whom Defendants contend owe a balance on their mortgage that conflicts with the terms (including the amortization schedule) of the underlying mortgage note.

39.     Excluded from the proposed Class are Defendants and their parents, subsidiaries, affiliates, officers and directors, and any entity in which either Defendant has a controlling interest; any and all federal, state or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

40.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

41.   <u>Numerosity</u>:   The Class is so numerous that joinder of all members is impracticable.   Upon information and belief, members of the Class number as many as two million.[1]

42.   <u>Commonality</u>:   There are questions of law or fact common to the Class.   These questions include, but are not limited to:

(a)   whether Nationstar possesses records sufficient to verify the balloon payments it purports Class members owe;

(b)   whether Bank of America possess records sufficient to verify the balloon payments it purports Class members owe;

(c)   whether Nationstar's failure to timely or sufficiently respond to the written requests of Class members violates the requirements of 12 U.S.C. § 2605(e);

(d)   whether Nationstar's refusal to provide a complete servicing and payment schedule to Class members seeking to verify the purported "balloon payment" owed violates the requirements of 12 U.S.C. § 2605(e);

(e)   whether Nationstar's attempts to collect balloon payments, premised on late payments on daily simple interest loans, amount to attempts to collect a debt, pursuant to 15 U.S.C. §§ 1692, *et seq.*;

(f)   whether Nationstar's unsubstantiated assertions of amounts owed in balloon payments by Class members amount to unfair debt collection practices pursuant to 15 U.S.C. §§ 1692, *et seq.*;

(g)   whether Nationstar's attempts to collect unsubstantiated balloon payments, premised on late payments on daily simple interest loans, are unlawful;

(h)   whether Nationstar has been enriched unjustly;

(i)   whether Bank of America has valid contracts with Class members;

(j)   whether Bank of America breached the terms of its contracts with Class members;

---

[1] David Lazarus, "BofA Cuts 2 Million Customers Loose." *Los Angeles Times* (May 14, 2013) (detailing Bank of America's sale of servicing rights for two million mortgages to Nationstar), available at http://articles.latimes.com/2013/may/14/business/la-fi-lazarus-20130514).

1   (k)   whether Class members were injured as a result of Bank of America's breach;

2   (l)   whether an injunction should issue; and

3   (m)   whether declaratory relief should be granted.

4   43.   <u>Typicality</u>:   Plaintiffs' claims are typical of the claims of the Class, in that

5   Plaintiffs and the Class are mortgagors with daily simple interest loans that were originated or

6   serviced by Bank of America, and whose loans subsequently became serviced by Nationstar.

7   Nationstar purports that Plaintiffs — like all other Class members — owe additional principal on

8   their mortgage, but Nationstar makes this assertion without suitable records to verify such a

9   claim, and has not provided sufficient verification of the purported debt owed.  Plaintiffs, like all

10  other Class members, have been injured by Nationstar's practices in that Plaintiff's, like all other

11  Class members, are required to pay an unsubstantiated and unconscionable debt to Nationstar or

12  else risk foreclosure on their real property.[2]

13  44.   Similarly, Plaintiffs, like all other Class members, have a valid contract with Bank

14  of America, articulating the terms of the mortgage loans, which include a payment schedule

15  detailing the number of payments owed and the amount of each payment.  Bank of America has

16  breached its contract with Plaintiffs and Class members by attempting to extract an amount

17  greater than the amount detailed in the payment schedules in the underlying mortgage notes,

18  without providing proof of its right to do so under the contract.  Such action on the part of Bank

19  of America also violates the covenant of the duty of good faith and fair detailing, owed to

20  Plaintiffs and Class members, as it injures the rights of Plaintiffs and Class members to receive

21  the benefits owed to them under the contracts at issue.

22  45.   <u>Adequate Representation</u>:   Plaintiffs will fairly and adequately protect the

23  interests of the Class.  Plaintiffs' interests do not conflict with the interests of the Class members.

24  _____

25  [2] *See, e.g., Renfroe v. Nationstar Mortgage* LLC, No. 1:14-cv-00314-CG-M, Amended
    Complaint (Dkt. No. 24), ¶ 16 (S.D. Ala. Oct. 10, 2014) (alleging multiple instances in which
26  "Nationstar has used the same generic form letters to respond to qualified written requests and
    notices of servicing errors [which] failed to address the specific issues addressed in the
27  borrower's letter and violated RESPA Section 2605(e)"); *id.* at ¶ 17 ("Upon information and
    belief, Nationstar as a matter of course only provides payment history in response to the such
28  [sic] request covering the period of time in which it serviced the loan.").

Furthermore, Plaintiffs have retained competent counsel experienced in class action litigation and consumer protection litigation. Plaintiffs' counsel will fairly and adequately protect and represent the interests of the Classes.  Rule 23(a)(4) and 23(g) are satisfied.

46.     <u>Predominance and Superiority</u>:  Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law (and would therefore risk, *inter alia*, foreclosure of their real property based upon unsubstantiated and unconscionable balloon payments).  Because of the relatively small size of each Class member's individual claim, it is likely that only a small percentage of Class members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class members will continue to incur damages (including the risk of foreclosure due to unsubstantiated and unconscionable balloon payments), and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

47.     <u>Suitability of Injunctive Relief</u>:  In acting as above-alleged, and in failing and refusing to cease and desist (or to provide sufficient evidence to substantiate their claims) despite public complaints filed with a State's Attorney General, Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and corresponding declaratory relief each appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants and other mortgage servicers and lenders.

48.     Injunctive relief is necessary to prevent further unlawful and unfair conduct by Defendants. Money damages, alone, could not afford adequate and complete relief, and

injunctive relief is necessary to restrain Defendants from continuing to commit their illegal and unfair practices.

**COUNT I**

**Violation of Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*.**
**(As to Defendant Nationstar)**

49.    Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

50.    Defendant Nationstar is a "servicer" of the mortgages of Plaintiffs and Class members, within the meaning of 12 U.S.C. § 2605(i)(2).

51.    Defendant Nationstar engages in "servicing," within the meaning of 12 U.S.C. § 2605(i)(3).

52.    Plaintiffs' and Class members' mortgages as "federally related mortgages" pursuant to 12 U.S.C. § 2602(1).

53.    Plaintiffs' written communications to Nationstar contesting the validity and accounting of servicing and amortization of the purported, surplus principal on their mortgage — the March 10, 2016 AG Email to Nationstar and Exhibit J — were each a "qualified written request" ("QWR") and "notice of error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and its accompanying regulation, 12 C.F.R. § 1024.35.

54.    The AG Email to Nationstar and Exhibit J satisfied RESPA's requirement that a QWR and NOE sufficiently identify or enable the servicer to identify (1) the borrower, (2) the loan account at issue, and (3) "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e); *see also* 12 C.F.R. § 1024.35.

55.    Nationstar failed to sufficiently respond to Plaintiffs' QWR and NOE correspondences, in violation of 12 U.S.C. § 2605(e).  Specifically, Nationstar failed to conduct a reasonable investigation into the errors described in Plaintiffs' two letters by refusing to provide an entire servicing history for 1100 Parnell Ave.  At minimum, Nationstar did not — and upon

1   information and belief, *cannot* — explain any increases to the principal on Plaintiffs' mortgage

2   that occurred prior to July 2013.

3       56.     Additionally, Nationstar failed to provide a timely response to Plaintiffs' QWR

4   and NOE correspondences.  Pursuant to 12 U.S.C. § 2605(e), upon receipt of a QWR, a servicer

5   must acknowledge receipt of the correspondence within five days, excluding legal public

6   holidays, Saturdays, and Sundays.  Nationstar received Plaintiffs' first QWR (the AG Email to

7   Nationstar) on March 10, 2016, but did not respond until March 23, 2016.  *See* Exhibit G

8   (Nationstar's March 23, 2016 Letter, acknowledging receipt of Plaintiffs' QWR on March 10,

9   2016).

10      57.     With regard to Plaintiffs' second QWR, sent by Plaintiffs' attorney on July 8,

11  2016, Nationstar *never* sent an acknowledgement of receipt, thereby engaging in a separate

12  violation of 12 U.S.C. § 2605(e)'s requirement of acknowledgement of receipt.

13      58.     Additionally, Defendant Nationstar committed separate violations of RESPA by

14  failing to take timely action to respond to Plaintiffs' "requests to correct errors relating to

15  allocation of payments, final balances for purposes of paying off the loan, or avoiding

16  foreclosure, or other standard servicer's duties," as required by 12 U.S.C.S. § 2605(k)(1)(C).

17      59.     Upon information and belief, Nationstar's violations of RESPA with regard to

18  Plaintiffs' QWR and NOE correspondences, as detailed herein, are part of a systemic pattern and

19  practice of failing to timely respond to QWRs and NOEs, failing to conduct a meaningful

20  investigation in response to QWRs and NOEs, failing to provide sufficient (or event relevant)

21  documentation to support its contentions as to balances owed on the mortgages it services, and

22  failing to obtain (much less *re*tain) complete payment histories for the mortgages it services.  *See*

23  *supra* note 2.

24      60.     Plaintiffs and Class members have suffered actual damages as a result of

25  Nationstar's myriad failures to comply with RESPA.

26      61.     Plaintiffs, on behalf of themselves and the Class, seek actual damages, statutory

27  damages, costs, and attorney's fees pursuant to 12 U.S.C. § 2605(f).

28

**COUNT II**

**Violation of Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692,** *et seq.*
**(As to Defendant Nationstar)**

62.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

63.     Plaintiffs and Class members are "consumers" pursuant to 15 U.S.C. § 1692a(3).

64.     Any additional, unsubstantiated mortgage principal sought by Nationstar — above and beyond the amount expressly articulated in the underlying notes of Plaintiffs and Class members, respectively — is a "debt" pursuant to 15 U.S.C. § 1692a(5).

65.     Nationstar is a "debt collector" pursuant to 15 U.S.C. § 1692a(6).

66.     All communications from Nationstar to Plaintiffs and Class members—including but not limited to all letters exemplified by Exhibits D, E, K, and L are "communications" pursuant to 15 U.S.C. § 1692a(2).

67.     Nationstar's acts and practices, as detailed herein, violate the prohibitions set forth in 15 U.S.C. § 1692d regarding false or misleading representations made in connection with the collection of a debt.   Specifically — in violation of 15 U.S.C. §§ 1692d(2) and 1692d(10), and all other applicable portions of this subsection — Defendant has falsely represented the character, amount, or legal status of the inflated principal purportedly owed from all simple interest loans for which it acquired servicing rights from Bank of America, and falsely and deceptively attempts to collect sums purportedly owed, which Nationstar refused and refuses to verify when put to its proof by Plaintiffs and Class members.   This is evidenced, *inter alia*, by Defendant's inability to substantiate the nearly $10,000 in arrearages it claims that Plaintiffs owe, despite being asked, repeatedly, by both Plaintiffs and the Arkansas Attorney General to do so.

68.     The conduct described in the immediately preceding paragraph (and alleged more fully in the entirety of this Complaint) similarly violates

(a)     the prohibitions articulated in 15 U.S.C. § 1692f, which guards against unfair and unconscionable acts and practices utilized in connection with the collection of a debt; and

(b)     the requirements set forth in 15 U.S.C. § 1692g regarding, *inter alia*, (1) the validation of a debt, by a debt collector, upon notice from a consumer seeking validation of a debt, and/or (2) the requisite procedures following a consumer's disputing the debt at issue.

69.     As a result of Defendant's violations of 15 U.S.C. §§ 1692, *et seq*. detailed herein, and pursuant to 15 U.S.C. § 1692k, Plaintiffs seek on behalf of themselves and Class members the following: actual and statutory damages, attorney's fees, and costs.

**COUNT III**

**Unjust Enrichment**
**(As to Defendant Nationstar)**

70.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

71.     Plaintiffs and Class members conferred non-gratuitous benefits upon Defendant in the form of payments on their respective mortgages.  Mortgage servicers such as Nationstar collect monthly fees in return for the services provided.  This fee is typically based, *inter alia*, on the outstanding principal loan balance.

72.     Defendant accepted or retained such non-gratuitous benefits with full knowledge that Plaintiffs and Class members did not consent to Defendant's practice of adding unsubstantiated principal amounts to the mortgages of Plaintiffs and Class members, resulting in astronomical and arbitrary "balloon payments" at the conclusion of the term of the mortgage. Defendants have been unjustly enriched in receiving any and all revenues (including but not limited to excess interest and principal payments) resulting from the acts and practices complained of herein.

73.     Defendant's retention of such ill-gotten gains offend principles of equity, and accordingly Plaintiffs and Class members seek the disgorgement and restitution of the amounts by which Defendant was unjustly enriched.

## COUNT IV
## Breach of Contract

### (As to Defendant Bank of America)

74.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

75.     A valid contract exists between Bank of America and Plaintiffs, and a valid contract exists between Bank of America and Class members.

76.     Those contracts are governed by North Carolina law.  *See* Exhibit A at 3 ("This Promissory Note is made in North Carolina and shall be governed by federal law and by the laws of the State of North Carolina.").

77.     Among the terms of each contract Bank of America entered into with Plaintiffs and Class members is a "Federal Truth In Lending Disclosure" which details, *inter alia,* the principal of the loan and the loan's payoff schedule—detailing the number of payments over the entire life of the loan, as well as the amount of each payment.  *See, e.g.,* Exhibit A.

78.     Bank of America has systematically breached the terms of its contracts with Plaintiffs and Class members by refusing to abide by the terms of the respective payoff schedules.

79.     Plaintiffs and Class members have been injured as a result of Bank of America's breach, and accordingly seek their actual damages.

## COUNT V

### Breach of the Duty of Good Faith and Fair Dealing
### (As to Defendant Bank of America)

80.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

81.     "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985).

82.     Bank of America breached this covenant by asserting, through its agent Nationstar, that Plaintiffs and Class members owe inflated principal amounts on their mortgages without concurrently verifying the alleged debts.   Such actions deprive Plaintiffs and Class members of the benefits of their respective agreements with Bank of America (specifically, release of the deed to the real property secured by the mortgage upon receipt of final payments per the amortization schedules set forth in the underlying notes).   To the extent that Bank of America *is* owed any additional principal under the terms of its agreements with Plaintiffs and Class members, Defendant *must* provide proof thereof, and failure to do so—and to concurrently put Plaintiffs and Class members at risk of foreclosure based only on Defendant's say so—is an embodiment of bad faith.

83.     Bank of America's breach of the implied covenant of good faith and fair dealing has injured Plaintiffs and Class members.   Plaintiffs seek compensatory damages, on behalf of themselves and Class members.

## COUNT VI

### Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202

84.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

85.     An actual case and controversy within the meaning of the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, exists between Plaintiffs, proposed Class members, and Defendants.   Such case and controversy may be adjudicated by this Court.

86.     Plaintiffs and Class members have an underlying contract with Bank of America, covering the rights and obligations of their respective mortgages.   These contracts provide, *inter alia*, the amount of money to which Bank of America is entitled during the life of the mortgage, including principal, interest, and fees (when appropriate).   The contracts delineate the circumstances under which Bank of America may seek these sums from Plaintiffs and Class members.

87.     If Plaintiffs or Class members do not pay amounts owed under the contracts, Bank of America may resort to certain methods of recourse, including foreclosure on the real properties at issue in the respective mortgages.

88.     However, in order for Bank of America (or Nationstar, as its agent) to elect any remedy or remedies under the mortgage contracts, it must provide *evidence* of breach.  In the instant matter — and on information and belief, on a systemic scale — Defendants have asserted a breach of the terms of the mortgage contract, in the form of an unsatisfied principal balance, that is predicated on an improperly-calculated payment history that Defendants refuse to produce.

89.     Therefore, Plaintiffs seek, on behalf of themselves and the Class, a declaration that Defendants may not assert a breach of the underlying mortgage contracts concerning the real property of Plaintiffs and Class members, unless they concurrently provide complete and accurate payment histories (or commensurate proof) fully corroborating their allegations of breach.

90.     If not permanently enjoined by this court, Defendants will continue to illegally attempt to exact additional payments — not actually owed under the terms of the contract — from mortgagors.  Such course of conduct has caused and will continue to cause irreparable harm (including economic injury) to Plaintiffs and Class members.   Therefore, injunctive relief pursuant to 28 U.S.C. § 2202 is also appropriate, along with all other legal and equitable relief.

**COUNT VII**

**North Carolina Declaratory Act, N.C. Gen. Stat. §§ 1-253, *et seq*.**

91.     Plaintiffs hereby incorporate by reference the allegations contained in the paragraphs preceding Count I.

92.     Plaintiffs seek a declaratory judgment, pursuant to N.C. Gen. Stat. §§ 1-253, *et seq*., that Defendants may not assert a breach of the underlying mortgage contracts concerning the real property of Plaintiffs and Class members, unless they concurrently provide complete and accurate payment histories (or commensurate proof) fully corroborating their allegations of breach.

**PRAYER FOR RELIEF**

93.     Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

(c)     for an order certifying the proposed Plaintiff Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(d)     for declaration that Defendants may not assert a breach of the underlying mortgage contracts concerning the real property of Plaintiffs and Class members, unless they concurrently provide complete and accurate payment histories (or commensurate proof) fully corroborating their allegations of breach;

(e)     for an order enjoining Defendants from attempting to collect any payments from Plaintiffs or Class members, under the terms of the underlying mortgage contracts with Plaintiffs and Class members, without providing evidence sufficiently corroborating the legitimacy and amount of said payments;

(f)     for an award to Plaintiffs and to the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(g)     for a declaration that Nationstar must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the acts and practices complained of herein, and/or make full restitution to Plaintiffs and Class Members;

(h)     for pre-judgment and post-judgment interest as provided by law;

(i)     for attorneys' fees and costs; and

(j)     for such other and further relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

94.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated:  October 7, 2016

Respectfully submitted,

*/s/ Hank Bates*
Hank Bates (Cal. Bar No. 167688)
habtes@cbplaw.com
Carney Bates & Pulliam, PLLC
519 West 7th Street
Little Rock, Arkansas 72201
Telephone:  (501) 312-8500
Facsimile:   (501) 312-8505

Brandon M. Haubert (*pro hac vice* pending)
brandon@whlawoffices.com
Wilson & Haubert, PLLC
102 South Fulton Street, Suite B
Clarksville, Arkansas 72830
Telephone:  (479) 754-2512

John B. Thomas (Bar No. 269538)
jthomas@hicks-thomas.com
Eric Grant (Bar No. 151064)
grant@hicks-thomas.com
Hicks Thomas LLP
8801 Folsom Boulevard, Suite 172
Sacramento, California 95826
Telephone:  (916) 388-0833
Facsimile:   (916) 691-3261

*Counsel for Plaintiffs*
*JIMMIE HODGE and GLORIA HODGE*

Complaint